May it please the Court, Alan Nakasal for the Appellant, Mediterranean Shipping Company. We believe that the Court is correct that the Court focused exclusively on whether the complaint pled an injury at sea for purpose of the maritime tort. The complaint did allege or predicate, ad homo juduris texan, on other claims, that being the indemnity and the declaratory relief. The Mediterranean Shipping Company bill of lading, as well as the bill of lading that was produced by Pepeles, which we believe was fraudulent, are at the heart of this particular dispute. All of the claims arise under the ocean bills of lading. Is the cargo still in the container yard? The cargo, the last I had heard, was still being detained in Singapore. Or Shanghai, I'm sorry, Your Honor. Shanghai? Yes. What had happened was that the fraudulent bill of lading was presented, delivery was authorized, but before the cargo was picked up, the true bill of lading holder appeared and the cargo got detained by customs in Shanghai. And I believe it is still there, although I believe our clients are trying to get the cargo released. And, of course, I think Pepeles are claiming that the cargo was theirs in Shanghai. Counsel, there is no contract directly between the plaintiff and the defendant in this case. Well, they claim there is. They claim that their bill of lading is authentic and that obligates us to deliver the cargo to us, to them. We claim that our bill of lading is genuine. And as a result of that, of their fraudulent bill of lading, we were unabated. Well, if you're right, there is no contract between the plaintiff and the defendant.  If we are correct. Yes, that's correct. Under your theory, there is no contract that exists. Are you aware of any case that allowed a declaratory judgment claim under maritime jurisdiction where there is no contract between the plaintiff and the defendant of any kind? I am not aware of that, Your Honor, but I'm not sure that's really required because the declaratory relief action does arise really under the MSC bill of lading. It calls for the court to be. Well, it really arises in tort if you don't have a contract. Well, a declaratory relief action and a indemnity claim can sound in contract or it can sound in tort. We don't, we do not allege. It seems like you're having to, you're trying to get it both ways. You don't have a contract, but you don't want to really be in tort because then you're, you know, in court. Well, Your Honor, then you would only have, you would do what the district court did and just analyze it strictly as a tort case, but it's not a tort case. It's indemnity and declaratory relief. The declaratory relief action requires the court to determine the rights and liabilities of the parties under the MSC bill of lading, which we claim to be authentic. It requires the court to determine the rights and liabilities under the fraudulent bill, which they claim to be authentic as well. Did the court adjudicate the issue as to which of these bill of ladings is authentic? The London court, which was an amnesty case, did find that our, the MSC original bill of lading was genuine and that the bill of lading that was produced by the appellate was fraudulent. So why can't you use that finding to release the cargo to, I guess, to be yourselves now, because? Well, we are trying to do that. That's correct. That's what we are trying to do is get the cargo released in Shanghai based on that finding so that we may sell it and recover the monies that we have to pay. I guess I don't understand what you're trying to accomplish by this, this appeal particularly, because even if we were to reverse the district court, it seems 99 percent likely that there would be a dismissal on firm and on convenience grounds. Your Honor, we'll take our chance on that. We don't believe that. It doesn't seem like a very practical solution, I guess, is all I'm suggesting. Your Honor, if there is admiralty jurisdiction, that gives us certain remedies in admiralty, including attachment of assets of the debtors or the appellates. So it's not just a matter of the underlying merits of the claim being adjudicated here. It may be, if the court does have admiralty jurisdiction, that we will have the right to attach property of the appellates, thereby giving us security for claims that are brought elsewhere. And the forum non-convenience, again, Your Honor, is not, although the motion was brought, it was never ruled upon. I think it's clear from the law that declaratory relief claims that arise under maritime contracts, marine insurance policies, warfare contracts, give rise to admiralty jurisdiction. But it's – I can't get past it. It seems circular. You have the position that you have – that the plaintiff and the defendant have no contract between themselves, and yet you're trying also to rely on cases in which the parties had a contract, and that's the basis for those cases. I don't – I'm not sure, Your Honor, that that's the sole basis for those cases. I think those cases find that because the declaratory relief action – relief claim arises under a maritime contract, that is, the maritime contracts are at issue in those cases, and the courts are required to determine the rights under those contracts, not just the fraudulent contract that we claim that we're not a party to, but also our contract. The indemnity claim, for example, Your Honor, arises because of our indemnity – because of our liability under the MSC genuine bill of lading to the true holder of the bill of lading. The court needs to determine whether that bill of lading is genuine and whether we had a legal obligation to deliver under the other party – to the other party, the true holder. And you get to litigate this again, even though you've litigated it in London? We were sued, Your Honor, by the holder of the true bill of lading in London. That true bill of lading holder did obtain a judgment in the amount of $2.8 million against our client. We are now seeking indemnity for our liability, which was incurred under that MSC bill of lading. Has that been paid? I'm sorry, Your Honor? Has it been paid? Yes, I believe it has. Well, do you know? I believe it has been paid, Your Honor. So it's been paid. And the ownership – you're – is MSC claiming that it now owns the 360 tons of copper cathodes? Well, I think as part of that case, then, the – we were paid the – we paid the $2.8 million to the true holder and, therefore, now are asking the Shanghai Court to release the cargo on the grounds that we are now entitled to possession and may, at that point, salvage the cargo and thereby try to recoup some of our losses. Well, so the price of copper has gone way down, has it? I am not sure, Your Honor. All you've got to do is read the papers. Yeah. Okay. So we would – assuming it has, Your Honor, then we would, of course, not be able to make up what we have paid out to the bill of lading holder in London. And in addition, of course, in London, we were held liable for their costs, which included attorney's fees. So certainly the value of the cargo will not be enough to recoup whatever we had – whatever liability we incurred in London. So let me just – the core of the indemnity claim, though, is you were found liable by the London court because of your contract, the bill of lading. For breach of the – that's correct. Right, for breach of contract. And maritime conversion. Okay. The contractual claim was a part of that because they asserted a valid bill of lading that you didn't fulfill, right? That's correct. And your indemnification claim now is not – it's based on that you want indemnification for your liability for the breach of contract. So why doesn't that sound in contract? Well, we believe it does. Why are you entitled to indemnification? Because you've been defrauded, right, which is a tort. Yes. It's so confusing. Yes, that's correct. I mean, your ultimate theory is that you have been defrauded because if the contract, the only existing real contract were fulfilled, you know, it has been. I mean, you had the valid bill of lading person on the other side. And so it seems to me that the only reason you can turn to this person and say pay me back is that they have committed a tort against you by defrauding you. They have falsely taken away or converted in some manner. That may apply to the indemnity claim. Although, again, the indemnity claim, when you adjudicate the indemnity claim, you have to determine, first of all, did MSC have a legal obligation under its bill of lading to pay the third party? That's part of the indemnity claim. That sounds like a contract. But that's already decided. That's not before this Court anymore. They were not. Well, they were not parties to that suit, Your Honor. So, well, we may be. But there's a judgment, though. There is a judgment against us by the true holder. They were not, as far as I know, were not a party to that lawsuit. So, while we will try to use it, it may not be enforceable against them. Well, can't you go to Shanghai and say, look, we've got a judgment by a British court that holds that we have the true bill of lading and Ningbo had a forced bill of lading. Yes, and I think they are trying to do that, Your Honor. Just like Ningbo Tapre is there in Shanghai saying we have the real bill. The bill of lading that was presented in London is not a genuine bill. It's we have the genuine bill. So, yes, we could try to use that in London. I mean, in Shanghai, the London judgment. Whether or not it's binding on Ningbo Tapre under Chinese law, I do not know. But the declaratory relief action also, which we have not focused on, it does require the court to determine the rights and liabilities of the parties under the MSC bill of lading. It requires the court to determine which bill of lading is authentic and who is entitled to delivery under both bills. And we believe that under those facts that the whole fundamental purpose of protecting maritime commerce is implicated and that the court should therefore find admiralty jurisdiction in those particular facts. So then if that happens and then the United States court concludes that you have had the valid bill of lading and Ningbo had a fraudulent bill of lading and the copper is in Shanghai, that you can levy against their assets here. That's correct. If we're able to obtain a maritime claim here. That's the game plan. Well, that's one of the purposes of the action, yes. Let me just ask. Yes, sure. So Judge Feist never got to consider these arguments? Because he did the sua sponte, right? That's correct. And the only thing we have is the written opinion, which appears to focus exclusively on the tort locality test and did not mention the declaratory relief cause of action or the indemnity claim and had no analysis of those causes of action. And he didn't even get to brief that. That's correct. That's what I find troublesome. What about this? I remember, you know, he waived the tort and sued and taught us a subset. Well, there are other causes of action, we think, that would provide a basis for admiralty claims, not just the declaratory relief action but indemnity, but it's also possible, I think, to bring a claim for possession of the cargo under as a possessory action like the court did in the Hup 900 bags of marbled peppered case as well as the Clickham Steel case where there were other causes of action that we might, if given a chance to amend, we would also raise on remand. Do you know what indemnitas or subset is? Indemnitas is, are you referring to the, I'm not sure. There was a P&I club that was referred to as indemnitas, but otherwise I don't know. What's a P&I club? A P&I club is a sort of insurance that covers liabilities and casualties for ships. The first course we took in law school at Berkeley was common law actions, see, and we learned all about how to go back and read cases from 1500s and all that. I never thought any of that had any value at all until now. You never know. Those were like the peditory or possessory actions which, of course, the admiralty does allow, which tries the title to bills of lading as well as title to property, maritime property. Don't research what I've said because I'm probably using the wrong writ. No, some of that authority is set forth in our brief, Your Honor. In the WADA, Masuda versus WADA, as well as the Hukwok versus the pepper, 900 bags of pepper and the flipping steel cases, I think, which all involve disputes over title and possession of cargo and bills of lading. They don't have any assets in England? Ningbo Top Trade, we believe, is a Chinese company. The individual has also been sued. He is actually, we believe, a U.S. resident but is a citizen of China. And then Top Trade USA is a California company, which we believe is the You've got a judgment from a British court. You can't levy on that? Well, we certainly could try, I guess, Your Honor. But I would expect that if we are allowed to go back on remand, we'll file or add this cause of action for enforcement of judgment or file a separate action for that. Did you go to a special admiralty school? Well, I went to USC Law School, which is, of course, not a specialty admiralty school. I think the only school where admiralty is a specialty would be Tulane Law School. No, London, London and Oslo.  In the U.S. But there was an admiralty course taught there by the Lillick, McHose and Charles firm, which is many years ago, but which actually I started and clerked at. They were specialists in maritime law? Yes. What firm was that? Lillick, McHose and Charles. Oh, Lillick, McHose. Yeah, which is now, I guess, Pillsbury-Madison, eventually merged with I was always waiting. One time I did meet Mr. McHose. I think I brought him in on a stretcher. Mm-hmm. Should we hear from the other side? Thank you, Your Honor. Thank you. Your Honor, may I please look for Robin Ho for the appellees? The appellees will respond only to the issue on whether the indemnity and declaratory judgment can sign contract. This honorable court, in the case of Stanford Wrench v. Maryland Casualty, the court applied the California law and stated that if a claim is dependent upon an underlying contract, that claim signs in contract as opposed to torts. Conversely, for our case at hand, both indemnity and declaratory judgment claims are not dependent upon the bill of lading. As alleged in the complaint, there were no contractual relationships between the parties, and there was no allegation of that appellees ever engaged in any activity for contract formation or contract performance. In fact, there's no showing of contractual duties between the parties. In fact, the appellant simply alleged that the appellees stole the cargo by forging the bill of lading. Now, the bill of lading is of no importance to our case to determine the appellee's liability because for all intents and purposes, the forged bill of lading could have been a key to unlock those containers for the appellees to steal the cargo. So are you admitting that your client forged the bill of lading? No, Your Honor, I'm not admitting... Isn't that one of the issues in the declaratory relief? No, Your Honor. I'm not, I am not admitting on behalf of my client they committed any sort of wrongdoing. I am concentrating on the facts of the case based on the pleading. You're saying that the theory by which they can win is that you have to have, your client has to have committed some tort, because otherwise there's no obligation that flows from you to them because you don't have a contract with them under the complaint. And unless your client has committed fraud, conversion, or some other tort, then there's no basis to hold you responsible. And is that basically your argument? Yes, Your Honor, you are entirely correct. At the two causes of actions, the indemnity could be based on equitable indemnity, which doesn't require a contract. And also the declaratory judgment could be then be deciding who has the genuine key to unlock those cargo rather than the bill of lading. So to summarize, both indemnity claim and the declaratory judgment claim is not dependent upon any underlying contract. Those two cause of actions, they sound in tort. A contract is not necessary for the appellant to plead in their complaint against the appellees. Well, here you have this cargo sitting in a container lot in Shanghai. And so the dispute is, who owns the cargo? Now, so where is that issue going to be resolved? In Shanghai, is that where you're saying it should be resolved? Your Honor, definitely the better forms to resolve those disputes will either be in Shanghai, where the cargo actually located, or go back to the London courts when there's already a judgment that has been decided based on the same allegation that underlined the complaint in our case. But the London court ruled, as I understand it, against your client. I understand that. However, Your Honor, I'd like to remind the court my client wasn't a party to the London action. So it will be up to the appellant to somehow bring my client to London courts under their jurisdiction and seek the remedies that's available there. We have went into a lot of analysis, and I believe our points were right on today's argument. Even if the appellant prevail in their appeal, most likely we will win in the motion to dismiss for nonconvenience. But ultimately, most likely, it sounds like you'll lose in London, where you would like to have this case brought. Well, again, it's not my job to represent my client in London. No, I understand. And I do not represent my client. They have committed any sort of wrongdoing. But coming back to the case at hand here, unless the court found that the indemnity claim or the declaratory judgment claim sound in contrast, otherwise the appeal should be dismissed. Thank you. I hope your client is paying you for your time today. Thank you, Your Honor. If I may, Your Honor, just a few points in closing and in response to counsel's argument. The court did ask me whether I could cite any cases where there wasn't necessarily a contract between the two parties. There are some cases that we have cited in our declaratory relief action which actually involved a bill lading that functions as a document in title. That is one of the functions of a bill lading. And there is a particular case that I would cite, the Hop-Up Block Trading v. 900 Bags of Black Pepper case, which is a 2000 Maryland District Court decision. And that case involved competing claims to the cargo but also involved an issuance of a second set of fraudulent bills as well. The court found admiralty jurisdiction because the bill lading functioned as a document in title and the dispute over title to possession of a bill lading or dispute over possession of the cargo implicates the fundamental interest of admiralty jurisdiction to protect maritime commerce. The Thip and Steel case also, we believe, is analogous to this case, as well as the Masuda v. Wada case where a bill lading was issued but a third party claimed, wrongfully claimed, and did not give up the bill lading. There was no allegation that that third party had a right to that bill lading. Therefore, there was no contract between the carrier and the tort fees or the third party who had taken the bill lading wrongfully. And yet the court found admiralty jurisdiction because the action was through to recover the bill lading and to recover the cargo covered by the bill lading. That's the Masuda v. Wada case in Hawaii. That was actually a yacht. That was actually a yacht, Your Honor, that was shipped from Japan to Hawaii. And the third party had confiscated the bill lading and refused to give it up to the He claimed that she was owed money for her services in connection with a yacht race in Japan. And what was the name of the case? That was the Masuda v. Wada case. M-A-T-S-U-D-A v. Wada, W-A. I went to high school with a fellow whose name was Masuda. And he was in the shipping business and all that. So I thought that might have a little conflict. Just two other points, Your Honor. On the indemnity claim, the underlying basis for the indemnity claim. He built all those huge tankers that were built in Japan. Okay. Including the Torrey Pines, which broke in half. That would be, well, it would either be Mitsubishi or Sasebo, I think.  Mitsubishi. Okay. The indemnity claim, Your Honor, I would just like to point out. The indemnity claim arises because of the alleged misdelivery or misdelivery of cargo by MSC and not delivering under their bill of lading. Our courts have exercised admiralty jurisdiction, where there are claims against an ocean carrier for misdelivery under an ocean bill of lading, just like the London court did. There is really no principled reason why claims against an ocean carrier for misdelivery under their bill of lading should be under admiralty jurisdiction. And a claim by that same carrier against a third party, which issued a fraudulent bill in the same case, should not be under admiralty jurisdiction. And in closing, Your Honor, we do ask that the court consider the principles enunciated by the Supreme Court in Kirby. Kirby recognized that the shore is now an artificial place to draw the line for admiralty jurisdiction. Kirby taught us that in analyzing admiralty jurisdiction, the court should consider the fundamental purpose and interest of the grant of admiralty jurisdiction. That fundamental purpose is to protect maritime commerce. Clearly, protecting the integrity of an ocean bill of lading, as in this case, implicates the fundamental interest of this court and admiralty jurisdiction to protect maritime commerce. Thank you. I believe it's in the high court, but as I understand from it, and I think the judgment was attached to the district court pleadings and may be in the record. Yes. I believe it was brought in admiralty in London. I believe in the London high court, and that's where the judgment was rendered. But it was an admiralty claim for, of course, breach of the MSC bill of lading, as well as maritime conversion. Okay. Yes. Thank you. Thank you. Thank you. Thank you.
judges: Pregerson, Graber, Wardlaw